UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | CRIMINAL NO: 3:15CR34 (JAM) |
|---|---|---|
| v. | : | |
| GEORGE BRATSENIS | : | Date:   March 11, 2016 |

### GOVERNMENT'S RESPONSE TO PRETRIAL MOTIONS

The Government respectfully submits this response to defendant George Bratsenis's various pre-trial motions, seeking discovery and severance of certain counts. For the reasons discussed below, these motions should be denied.

### BACKGROUND

On December 21, 2015, a Grand Jury sitting in Bridgeport, Connecticut, returned a five-count fourth superseding indictment against Bratsenis and Randi Feliciano.  Count One charges Bratsenis with Unlawful Possession of Ammunition by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(1) on or about September 29, 2014. Count Two charges Bratsenis and Feliciano, in violation of Title 18, United States Code, Section 371, from in or about 2013 through December 2014.  Count Three charges Bratsenis and Feliciano with armed bank robbery, in violation of 18 U.S.C. § 2113(d).   Count Four charges Bratsenis and Feliciano with carjacking, in violation of 18 U.S.C. § 2119.   Count Five charges Feliciano with armed bank robbery under the same statute.

On February 11, 2016, the Government filed a Trial Memorandum and Notice of Intention to Offer Evidence (Doc. 81). On February 25, 2016, Bratsenis filed the following motions:

1

1. Motion for Order of Discovery (Document No. 82)
2. Motion to Dismiss or Sever (Document No. 83)
3. Motion for Disclosure of Expert Witness and Inspection of Property Seized (Document No. 84)
4. Motion for Disclosure Pursuant to Rule 404(b) of the Federal Rules of Evidence (Document No. 85)

For the reasons discussed below the Government submits that the defendant's motions should be denied in their entirety.

## ARGUMENT

### I. Motion for Advance Disclosure of Jencks Act Material (Document No. 82)

#### A. Law enforcement notes are not discoverable under Jencks or Rule 16

The defendant has filed a motion requesting that the Court order the Government to produce "all written statements concerning all prosecution witnesses, as well as any and all reports, memoranda, notes, and interview summations concerning such actual/potential government witnesses not less than forty-five (45) days prior to jury selection herein." (Doc. 82, 2-3). Notably, much of the defendant's motion is moot as he has already been provided with the bulk of the materials he now requests, *e.g.,* dozens of law enforcement reports, including some memorializing witness interviews.

As a threshold matter, the Second Circuit has recognized that the raw notes of investigators do not constitute Jencks Act materials as defined by Rule 16. *See United States v. Koskerides*, 877 F.2d 1129, 1133 (2d Cir. 1989). For instance, in *Koskerides*, the Second Circuit held that the production of an interview memorandum prepared by the agent after his interview of the defendant constituted full compliance with Rule 16(a)(1)(A). *Id.* at 1133-34; *see also United States v. Elusma*, 849 F.2d 76, 79 (2d Cir. 1988) (finding that notes incorporated into

formal reports need not be preserved). In short, the notes of law enforcement agents are not witness statements within the meaning of the Jencks Act. Thus, while the Government will advise the agencies involved with the investigation that, to the extent that such items exist, they should preserve the notes of all witness and/or defendant interviews, the Government does not intend to disclose such notes unless it finds it necessary to do so pursuant to its *Brady* and *Giglio* obligations.

**B. The defendant's request for early Jencks material should be denied**

The defendant's request for the early disclosure of Jencks material should be denied because the Jencks Act provides for the disclosure of witness statements "after a witness called by the United States has testified on direct examination." 18 U.S.C. § 3500. The Second Circuit has consistently held that a district court's "power to order pretrial disclosure is constrained by the Jencks Act," and that the district court may not order advance disclosure inconsistent with the Jencks Act itself. *See United States v. Coppa*, 267 F.3d 132, 145, 146 (2d Cir. 2001) (reversing district court's decision to order early disclosure of Jencks Act material); *see also United States v. Sebastian*, 497 F.2d 1267, 1268-69 (2d Cir. 1974); *United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) ("the district court did not have the statutory authority to compel disclosure [of Jencks Act material], over the Government's objection, prior to trial"); *United States v. Algie*, 667 F.2d 569, 571 (6th Cir. 1982) (citing cases from all circuit courts of appeals). Nothing in Rule 16 alters the controlling authority of § 3500 or the Second Circuit case law cited above.

The defendant has cited no published authority that overrides the Act's unambiguous language that the Government must provide witness statements "after a witness called by the United States has testified on direct examination." 18 U.S.C. § 3500. Thus, the defendant's motion requesting a modification of the timing provisions of the Jencks Act should be denied on

3

its merits. Nonetheless, the Government is willing to arrange with counsel to agree upon a mutual disclosure date prior to trial at which time both the Government and the defendant will disclose Jencks Act material to one another.

### C. The defendant's Motion for Brady and Giglio Material

The defendant also requests disclosure of all Brady The Government is aware of its obligations under Brady and under Giglio. Notably, the Government has provided ample discovery, including police reports, phone records, interviews of witnesses, as well as detailed discovery letters summarizing the discovery material.

All the information about witnesses that the defendant requests and about which the Government is aware is contained in the material provided. Indeed, in providing the grand jury testimony and interview reports of all the Government's likely witnesses, the Government has gone far beyond the District's standing order on discovery. The premature nature of the defendant's Giglio (and Jencks) request is demonstrated by the fact that the Government has not finalized its witness list at this time. And, of course, the Government is under no obligation to turn over Giglio material of a witness the Government chooses not to call at trial. *See, e.g., Moseley v. City of* Chicago, 614 F.3d 391, 399 (7th Cir. 2010) ("Moseley argues that this is impeachment evidence and therefore *Brady* material that should have been disclosed. This argument fails because the state did not call Reed at trial and therefore the state had no obligation to turn over evidence that could impeach his testimony"); *United States v. Johnson*, 519 F.3d 478, 489 (D.C. Cir. 2008) (rejecting claim that government violated *Brady* by failing to disclose before suppression hearing that police officer involved in the events had an official reprimand based on the results of an Office of Citizen Complaint Review investigation, because officer did not testify at suppression hearing); *cf. United States v. Matthews*, 168 F.3d 1234, 1243 (11th Cir.

4

1999) ("Had the internal investigation been disclosed, it is unlikely that the government would have used Newton at sentencing. Even without considering Newton's testimony, however, the transcript contains overwhelming evidence implicating both . . . in the conspiracy").

The defendant has not outlined in his motions any specific defense or special situation that would trigger additional responsibilities under Brady or Giglio; indeed, the defendant does not even assert that the Government has not met its obligations. In short, the Government has fully and completely complied with its Brady and Giglio obligations. If the Government learns of any additional Brady or Giglio material not already disclosed, the Government will disclose the material.

### D.  The defendant's request for Statements from Cooperating Witnesses

The defendant believes that one of his co-conspirators will testify against him (Doc. 82 at 10). The Government has submitted a detailed trial memorandum which outlines the overwhelming evidence against the defendant (Doc. 81). A co-conspirator's testimony is not mentioned in the trial memorandum. Should a co-conspirator be willing to testify honestly in the defendant's trial and should the Government see the need for such testimony, the Government will supply the defendant with the materials he has requested in full compliance with Rule 16(a)(1)(A).

### II.     Severance is not warranted.
### (Document No. 83)

The defendant moves for his trial to be severed from that of his co-defendant Feliciano. Counsel for Feliciano has indicated that Feliciano does not intend to exercise his right to trial. To that extent, the defendant's motion is moot. But even if Feliciano elects to exercise his right to trial, there is a strong preference in the federal system for joint trials of defendants indicted

together. *United States v. Blount,* 291 F.3d 201, 208-209 (2d Cir. 2002) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). Where, as here, defendants are alleged to have joined in a common plan or scheme, the preference is especially strong. *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1988). Joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *Bruton v. United States*, 391 U.S. 123, 134 (1968). Joint trials further "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *United States v. Nosov,* 153 F.Supp.2d 477, 478 (S.D.N.Y. 2001) (internal quotation marks omitted). The Supreme Court explains the rationale for this preference as follows:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability – advantages which sometimes operate to the defendant's benefit.

*Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Thus, while joint trials may invite some prejudice to defendants, "[t]he risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money and scarce judicial resources that a joint trial permits." *United States v. Jimenez*, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).

Rule 8 of the Federal Rules of Criminal Procedure governs the joinder of (a) multiple counts against the same defendant and (b) two or more defendants in the same indictment. *United v. Turoff,* 853 F.2d 1037, 1042 (2d Cir. 1988). With respect to joinder of multiple defendants in multiple counts, Rule 8 permits joinder where, as here, "two or more persons' criminal acts are unified by some substantial identity of facts or participants or arise out of a

common plan or scheme." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (internal quotation marks omitted). "The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." *Id.*

Here, the government has met these legal requirements. The fourth superseding indictment alone establishes a substantial identity of participants in the charged criminal acts. Count Two describes a longer term conspiracy to rob banks and Counts Three and Five charge specific instances of bank robbery that were part of the overarching conspiracy charged in Count Two. Count Four charges a carjacking that was a specific object of the conspiracy charged in Count Two and intertwined with the bank robbery charged in Count Three. And, Count One simply charges the defendant's possession of ammunition just four days after his gun-point robbery of the People's Bank that is charged in Count Three and which was part of the Conspiracy charged in Count Two, and five days after the gun-point car jacking charged in Count Four.

The defendant also argues that Count One (Being a Felon in Possession of Ammunition) should be severed from Count Two (conspiracy to commit Armed Bank Robbery), Count Three (Armed Bank Robbery), and Count Four (Carjacking). Specifically, he argues that "[p]ossession of ammunition does not tend to show that Mr. Bratsenis committed bank robbery when no evidence exists proving any nexus whatsoever between the bank robberies alleged and the ammunition found" (Doc. 83 at 12). The defendant's "nexus" demand of the Government's proof impermissibly shifts the burden to the Government; in any event, severance of Count One is simply not warranted.

Federal Rule of Criminal Procedure 8(a) provides for the joinder of offenses "when they are (1) based on the same act or transaction, or (2) based on two or more acts or transactions

7

connected together or constituting parts of a common scheme or plan, or (3) of the same or similar character." *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988). "Joinder is proper where the same evidence may be used to prove each count." *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991). Joinder is also proper if the counts have a "sufficient logical connection" to each other. *See United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990).

Rule 8(a) also authorizes joinder of offenses which share a similar character. "Similar" charges include those that are "somewhat alike," or those "having a general likeness" to each other. *See United States v. Werner*, 620 F .2d 922, 926 (2d Cir. 1980). Counts that have a "sufficient logical connection" to each other are properly joined, *see Ruiz*, 894 F.2d at 505, as are those "where the same evidence may be used to prove each count." *Blakney*, 941 F.2d at 116. "[E]vidence of narcotics trafficking may be properly admitted to show knowing possession of a weapon." *United States v. Carrasco*, 257 F.3d 1045, 1048 (9th Cir. 2001) (quoting United States v. Butcher, 926 F.2d 811, 816(9th Cir. 1991); *United States v. Becerra*, 97 F.3d 669, 671 (2d Cir. 1996) (affirming admission in narcotics conspiracy prosecution of evidence of ammunition found during search).

Even if offenses are properly joined, Fed. R. Crim. P. 14 authorizes severance in certain limited circumstances. Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, ... or provide any other relief that justice requires." *Id.* "[A] defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks and citations omitted). A defendant seeking severance must further show that unfair prejudice resulted from the joinder, not merely that the defendant "might have had a better

chance for acquittal at a separate trial." *United States v. Rucker*, 586 F.2d 899, 902 (2d Cir. 1978). Indeed, "a defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (citing *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984)). There is no prejudice to the defendant "where a severance of counts would not result in a segregation of evidence." *United States v. Ballis*, 28 F.3d 1399, 1408-1409 (5th Cir. 1994*); see also United States v. Jones*, 880 F.2d 55, 62 (8th Cir. 1989) (finding no prejudice in failure to sever drug distribution charges from felon in possession charge when jury was instructed that it could consider felony conviction only as to gun charge).

Even if prejudice is shown, Rule 14 does not mandate severance. *See Walker*, 142 F.3d at 110 (citing *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538-39. "Rules 8(b) and 14 are designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Id.* at 539 (quoting *Bruton v. United States*, 391 U.S. 123, 131, n.6 (1968)). "[L]imiting instructions are often sufficient to cure any risk of prejudice." *Id.* (citing *Zafiro*, at 539).

The Second Circuit has repeatedly confirmed that a stipulation that the defendant was previously convicted of a felony without reference to the underlying nature or facts of the felony offense assures the defendant of a fair trial on a single-count § 922(g) indictment. *See, e.g., United States v. Chevere*, 368 F.3d 120, 121 (2d Cir. 2004) (per curiam) (holding that district court has no discretion to allow a defendant to withhold the prior felony conviction element of

9

the offense from the jury by stipulating to that element); *United States v. Belk*, 346 F.3d 305, 311 (2d Cir. 2003) (holding that "proper curative" instruction and the need for "evidence of a prior conviction to be narrowly tailored to the fact of the conviction itself reasonably protects the defendant's right to a fair trial). "In a prosecution under § 922(g)(1), there are no circumstances in which a district court may remove the element of a prior felony conviction entirely from the jury's consideration by accepting a defendant's stipulation to that element." *Chevere*, 368 F.3d at 122; *see also United States v. Amante*, 418 F.3d 220 (2d Cir. 2005) (ordering that bifurcation of felon in possession offense without government's consent was abuse of discretion).

In this case, joinder is proper for a number of reasons. *First*, there is a logical connection between the defendant's possession of ammunition charged in Count One and the armed bank robbery conspiracy, armed bank robbery and armed carjacking that are charged in Counts Two through Four respectively. The armed robbery of the People's Bank took place four days before the seizure of the ammunition from the defendant's bedroom, which, in turn, was searched as part of the investigation of the People's Bank armed robbery. *See United States v. Bullock*, 71 F.3d 171, 175 (5th Cir. 1995) ("We have allowed the joinder of firearm charges with other offenses when the gun was found during the investigation of the offense"). Moreover, since the jury will see the video surveillance of the defendant robbing the People's Bank while he pointed a gun at terrified tellers, managers and patrons and hear from the terrified victims, the defendant's possession of ammunition a mere four days after the armed robbery is certainly not more inflammatory than evidence of the robbery.

*Second*, at separate trials of the armed robbery counts and the gun count the Government would be entitled to offer much of the same evidence. At a separate gun trial, to prove the defendant's knowing possession of the ammunition, the Government would be entitled to show

10

that the defendant had used a gun in an armed robbery just four days earlier and in a carjacking five days earlier. *See, e.g., United States v. Toliver*, 283 Fed. Appx. 869, 871 (2d Cir. 2008)(witness' testimony that she saw defendant with gun thirty days before his being caught with gun properly admitted to prove defendant's knowledge). At a separate trial on the three armed robbery counts, the Government would be entitled to show, as proof that the defendant had participated in those crimes, that he had the means to commit the crimes, that is, he possessed ammunition. *See United States v. Ravich*, 421 F.2d 1196, 1204 (2d Cir. 1970)("[A] jury could infer from the possession of a large number of guns at the date of arrest that at least some of them had been possessed for a substantial period of time, and therefore that the defendants had possessed guns on and before the date of the robbery. Direct evidence of such possession would have been relevant to establish opportunity or preparation to commit the crime charged, and thus would have tended to prove the identity of the robbers, the only real issue in this trial"). Thus, severance of Count One from Counts Two through Four would serve no purpose other than to provide the defendant the opportunity to hear the evidence against him twice.

*Third*, this Court may take adequate precautions to limit the danger of any unfair prejudice by providing the jury with a limiting instruction. The defendant points to no reason why a limiting instruction would not suffice here.

The defendant relies on *United States v. Jones*, 16 F.3d 487, 489 (2d Cir. 1994) to suggest that a felon-in-possession charge must be severed from joined robbery counts. As the Second Circuit has observed, however, *Jones* turned on "unique circumstances" – there were two trials and the felon-in-possession charge was added only after the first trial resulted in a hung jury – which are not present here. *See United States v. Page*, 657 F.3d 126, 132 (2d Cir. 2011).

Indeed, in marked contrast to *Jones*, a review of the docket in this case reveals that the defendant was first charged with being a felon in possession of ammunition and the other charges were brought afterwards, as the investigation progressed.

### III. Motion for Disclosure of Expert Witnesses and Inspection of Property Seized (Document 84)

At trial, the Government intends to offer James Wines, Special Agent, Federal Bureau of Investigations, as an expert in Cellular Networks and Historical Cell Site Analysis. A copy of his curriculum vitae has been sent to counsel.

The defendant also moves to reserve the right to inspect property seized during his arrest and the search of his bedroom. In the March 11, 2015 letter to predecessor counsel, the Government invited counsel to view the seized evidence after making an appointment with Special Agent Michael Zuk of the FBI. The offer remains open.

### IV. Motion for Disclosure of 404(b) Evidence (Document No. 85)

Notwithstanding the Government's specific notice of intention to offer evidence of the defendant's prior prison term (Document 81) and specific mention of the crime of which he was committed in Count One of the indictment (Document 71), the defendant demands notice of "bad act" evidence (Document 85). In any event, the Government notes that the Second Circuit follows the "inclusionary" approach to admissibility of extrinsic acts under Rule 404(b). *See United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994). This approach permits evidence of other acts to be used if it is relevant for some purpose other than to show a probability that the defendant committed the alleged crime because he or she is a person of bad character. *See, e.g., United States v. Germosen*, 139 F.3d 120, 127 (2d Cir. 1998); *United States v. Benedetto*, 571 F.2d 1246, 1248 (2d Cir. 1978). For example, the Second Circuit has upheld the admissibility of

other acts evidence where such evidence was "relevant as background information to make the story of the crimes charged complete and to enable the jury to understand how the illegal relationship between the co-conspirators developed." *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996). In addition, other acts evidence may be admitted where it is "intertwined" with the evidence regarding the charged offenses. *See United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997); *Benedetto*, 571 F.2d at 1250.

At this time, the Government does not intend to introduce any 404(b) evidence or other "prior misconduct" evidence against the defendant in its case-in-chief **other than the evidence that is in the fourth superseding indictment and in the notice of intention to offer evidence**. Nonetheless, the decision as to whether the Government will seek to introduce other crimes evidence depends in large part on how the actual trial proceeds and whether issues such as knowledge, intent, plan or identity are in dispute. *See United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980). If the Government determines that it will seek to admit prior misconduct evidence, the Government shall advise the defense at the earliest possible time of the specific evidence it intends to present and file the appropriate motion with the Court.

## CONCLUSION

For the reasons discussed above, the Government respectfully requests that the foregoing motions be denied on the merits.

                                          DEIRDRE M. DALY
                                          UNITED STATES ATTORNEY

                                          */s/*

                                          RAHUL KALE
                                          ASSISTANT UNITED STATES ATTORNEY
                                          Federal Bar No. phv02526
                                          1000 Lafayette Blvd, 10th Floor
                                          Bridgeport, CT 06604

**CERTIFICATE OF SERVICE**

   I hereby certify that on March 11, 2016, a copy of the foregoing was filed electronically, by facsimile and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF System.


         */s/*

         RAHUL KALE
         ASSISTANT UNITED STATES ATTORNEY